UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ANGEL CHARLES,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 2:22-CV-370 JD |

## **OPINION AND ORDER**

Ms. Angel Charles filed for Social Security disability benefits on behalf of her daughter, A.L.L., a four-year-old child. After being denied at all levels, Ms. Charles filed this action appealing the Social Security Administrative Law Judge's (ALJ) decision. The Court finds Ms. Charles's arguments are without merit and affirms the ALJ's decision.

Ms. Charles[1] argues remand is required because the ALJ failed to assist her in developing the medical evidence of record and because the ALJ's written credibility determination of Ms. Charles's testimony was inadequate. Ms. Charles argues the ALJ inadequately developed the evidence of record by failing to order a pediatric consulting examination, despite a notation in another consulting examination reading, "Will need PEDI CE to make assessment." Ms. Charles construes this notation as a medical opinion disregarded by the ALJ. In actuality, there was no need for further evidence, because the record made clear that the claimant was not disabled, and the notation was not a medical opinion entitled to consideration. Next, the Court finds the ALJ's

---

[1] Though A.L.L. is the real party in interest, the Court will refer to the arguments in the plaintiff's brief as being made by Ms. Charles where possible to avoid potential confusion caused by the similar initialisms A.L.L. and ALJ.

written credibility determination presents no error. The determination is extensive and appears throughout the decision as the ALJ weighs and contrasts evidence; it is reminiscent of other Social Security determinations lauded by reviewing courts for their thoroughness. Even if the credibility determination lacked thoroughness, the Court would find harmless error, as the record strongly indicates A.L.L. was not disabled, even if all Ms. Charles's testimony was credited. Ms. Charles failed to present a case that claimant's limitations resulted in disability, and the ALJ committed no error in her thorough and well-reasoned analysis of the evidence. Presented with the ALJ's reasoned decision and a record indicating a preschooler of mostly normal health and abilities, the Court therefore denies the appeal.

### A. Standard for Disability for a Child

For a child to be considered disabled, the child's impairment must be as severe as those that make an adult unable to engage in any substantial gainful activity. *Sullivan v. Zebley*, 493 U.S. 521, 544, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990). Under the Personal Responsibility and Work Opportunity Reconciliation Act, a child is disabled if he or she has a "physical or mental impairment, which results in marked and severe functional limitations, and ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The SSA employs a three-step analysis to decide whether a child meets this definition. 20 C.F.R. § 416.924(a). First, if the child is engaged in substantial gainful activity, his or her claim is denied. *Id*. Second, if the child does not have a medically severe impairment or combination of impairments, then his or her claim is denied. *Id*. Finally, the child's impairments must meet, or be functionally equivalent, to any of the Listings of Impairments contained in 20 CFR pt. 404, subpt. P, App. 1. *Id*.

To find an impairment functionally equivalent to one in the list, an ALJ must analyze its severity in six age-appropriate categories: 1) acquiring and using information, 2) attending and completing tasks, 3) interacting and relating with others, 4) moving about and manipulating objects, 5) caring for yourself, and 6) health and physical well-being. 20 C.F.R. § 416.926a(a). The ALJ must find an extreme limitation in one category or a "marked" limitation in two categories. A marked limitation is one which interferes seriously with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(I). *Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 486–87 (7th Cir. 2007). A child aged 3–6 is considered a "preschooler" for the purpose of determining limitations in any domain and judged against the abilities of similarly aged children. 20 C.F.R. § 416.926a(g)(2)(iii)

**B. Facts**

A.L.L. is a minor child born in 2018. In 2021, her mother, Ms. Charles, filed for Social Security disability benefits on her behalf. Ms. Charles asserts A.L.L. suffers from a wandering or lazy eye, headaches, and pain in her legs and back, and sickle cell trait.[2]

A.L.L.'s primary impairments, as described by her application, are esotropia, headaches, and pain. A.L.L. has been diagnosed with esotropia, the misalignment of her eyes, and wears glasses. Her mother testified she was previously referred for surgery to attach her left eye cortex, but due to a move, the surgery was not completed, and A.L.L. would have to obtain a new referral. A.L.L.'s medical records include only a single optometry visit; there is no available

---

[2] "Sickle cell trait is not a disease, but having it means that a person has inherited the sickle cell gene from one of his or her parents. People with sickle cell trait usually do not have any of the symptoms of sickle cell disease and live a normal life." Centers for Disease Control, What You Should Know About Sickle Cell Trait, available at https://www.cdc.gov/ncbddd/sicklecell/documents/scd%20factsheet_sickle%20cell%20trait.pdf, *last accessed* September 14, 2023.

record of a referral for surgery or a diagnosis of an unconnected cortex. Ms. Charles further testified that A.L.L. experiences pain in her back and lower extremities after a long day of vigorous playing. While she is able to run, walk, bend, and squat without difficulty, her mother testified she sometimes wakes up in the night from pain. Her pain is sometimes treatable with Tylenol. None of A.L.L.'s medical records indicate mobility limitations or symptomatic abnormalities associated with pain, and they uniformly note she presented a pleasant and normal affect. Her mother also reports headaches four times a week, and her headaches are treatable with pain medication. She also reports that A.L.L. frequently experiences stomachaches and is slightly underweight. A.L.L.'s medical records do not reflect any digestive issues or history of being underweight. Her mother reports she sometimes had difficulty staying focused on tasks, but she can focus on activities such as looking at books or coloring for up to 15 minutes, which is confirmed by her preschool records.

      A.L.L.'s medical and educational records were available to the ALJ. A.L.L. is a preschooler of normal height and weight. (R. 32.) She gets along well with others (R 34) and is meeting or exceeding nearly all of her developmental goals at preschool. (R. 34.) Her medical records reflect several well-child visits addressing normal issues such as diaper rash and an upper respiratory infection. She has never been hospitalized for any issue related to her alleged disability.

      A hearing was held on March 22, 2023, and Ms. Charles testified and was represented by counsel. The Social Security Administration ultimately denied A.L.L. benefits at every stage. As part of the process, an October 2021 Disability Determination Explanation was issued; that record contained a notation by Dr. Steven Roush reading, "CE RATIONALE: WILL NEED PEDI CE TO MAKE ASSESMENT. As part of the investigation, the ALJ had already ordered a

pediatric consultative examination with an outside physician; that exam took place in September 2021 and was incorporated into the ALJ's ultimate decision. However, A.L.L. was never examined by a Department of Disability Services physician. In her 20-page written decision, the ALJ found A.L.L. had three medically determinable impairments: sickle cell trait, esotropia (eye misalignment), and lower extremity and back pain. In making these findings, the ALJ relied on the child's medical records, daycare assessment reports, and Ms. Charles's testimony. The ALJ also found non-medically determinable impairments of ADHD, left-eye blindness, and headaches. However, at step three, the ALJ found A.L.L.'s impairments, considered individually and in combination, did not meet or equal in severity the criteria of a listed impairment. (R. 16.) The ALJ considered multiple listing sections for each of A.L.L.'s described impairments[3] but found the medical evidence and the record overall did not demonstrate that A.L.L. met the requirements of any listing.

The ALJ then determined whether the impairments or combination of impairments functionally equaled the listings. In doing so, the ALJ wrote, "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the allegations concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence in the record." (R. 18-19.) The ALJ went on to state: "While the record generally demonstrates unremarkable conditions, and essentially, non-severe impairments as to the sickle cell trait, esotropia, and lower extremity and back pain, giving the claimant the benefit of the doubt, I continued with the sequential analysis."

---

[3] For pain in the back and lower extremities, the ALJ considered 101.15 (disorders of the skeletal spine resulting in compromise of a nerve root) and101.18 (abnormality of a major joint in any extremity); for esotropia, she considered 102.02 (loss of central visual acuity) 102.03 (contraction of the visual field in the better eye); and 102.04 (loss of visual efficiency, or visual impairment, in the better eye); and for sickle cell trait, she considered 107.05 (homolytic anemias, including sickle cell disease, thalassemia, and their variants).

After comparing Ms. Charles's testimony with the evidence of record, including medical records, daycare evaluations, and a pediatric consultative examination, the ALJ found A.L.L. did not exhibit marked or extreme limitation in any domain; in short, A.L.L. was largely able to function normally as a preschooler despite any medical impairments. Due to the lack of limitations, the ALJ rendered an unfavorable decision on A.L.L.'s application.

**C. Standard of Review**

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chavez v. Berryhill*, 895 F.3d 962, 968 (7th Cir. 2018) (*citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011). Judicial review is limited to determining whether the ALJ applied the correct legal standards and whether substantial evidence supports the findings. *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010). The district court may not, therefore, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Id.* If the Commissioner's decision lacks evidentiary support or an adequate discussion of the issues, it must be remanded. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010).

**D. Discussion**

The ALJ did not err by failing to assist the claimant in developing the medical evidence of record, nor was the ALJ's credibility determination of Ms. Charles's testimony insufficient. Accordingly, the Court affirms the ALJ's decision.

***(1) The ALJ did not fail to assist the claimant in developing the medical evidence of record.***

Plaintiff argues the ALJ "erred by failing to assist Ms. Charles in developing the medical evidence of record." (DE 8 at 3.) Ms. Charles argues the ALJ should have deferred to a notation within an October 2021 Disability Determination Explanation by Dr. Steven Roush reading, "CE RATIONALE: WILL NEED PEDI CE TO MAKE ASSESMENT." Wielding this single, nondeterminative doctor's note, the plaintiff argues the record was incomplete and the ALJ failed to assist the claimant in developing the record by ordering an examination by an in-house DDS physician. The ALJ's decision notes that while she relied on the consultative examination by an outside pediatrician, no DDS medical consultant examination took place because there was insufficient evidence to warrant one and because the record was adequately complete to support the ALJ's findings without one. (R. 23.) Plaintiff's argument fails for several reasons: first and most obviously, the ALJ did order a pediatric consultative examination. Dr. Tasneem Majid, a consulting independent physician, performed the pediatric CE on September 29, 2021, and her report is cited throughout the ALJ's decision. Ms. Charles provides no rationale for why this pediatric CE was inadequate, or what a second pediatric CE by an agency physician would find. That alone could defeat Ms. Charles's argument, but the Court also finds the ultimate question of

whether a CE is appropriate is reserved for the ALJ, and the ALJ does not have a burden to hunt for evidence of disability where a represented claimant brings none.

In order to get this argument off the ground, the plaintiff misstates the parties' burdens. "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110–11,120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000). However, in general, it is the claimant's duty to prove that he or she is disabled. 20 C.F.R. § 416.912(a). Here, the plaintiff was represented by counsel, submitted both her medical and school records, and was granted a hearing and one medical consulting examination. The creation of the record was exhaustive; despite this, the claimant *still* failed to marshal adequate evidence that she was disabled. When a plaintiff represented by counsel has been given every opportunity to make her best case before the ALJ and fails to do so, it is not the ALJ who has erred. *See Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017) (argument that ALJ failed to adequately develop the record was frivolous where claimant was represented and failed to describe her symptoms with specificity at the hearing).

Further, there is no requirement that the ALJ order a consulting examination, and the ALJ did not err by declining to order a consultative examination with an agency physician because the evidence was not ambiguous. "This court gives deference to an ALJ's decision about how much evidence is sufficient to develop the record fully and what measures (including additional consultative examinations) are needed to accomplish that goal." *Poyck v. Astrue*, 414 F. App'x 859, 861 (7th Cir. 2011). A consultative examination may be ordered when "the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on [the] claim." 20 C.F.R. § 416.919a(b). That means a consultative examination may be appropriate where the

evidence is ambiguous and therefore insufficient to support *any* decision, favorable or unfavorable. It does not mean the ALJ must order a CE when there is no evidence to support the claimant's disability. *See Skinner v. Astrue*, 478 F.3d 836 (7th Cir. 2007) (ALJ's comment that there was "very limited objective medical evidence of disability… was not commenting on a gap in the medical evidence that a consultative examination would have filled"); *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 679 (7th Cir. 2010) (no error where ALJ did not arrange sua sponte for a third medical expert to assess the evidence where two state agency consultants opined that claimant did not suffer from impairments that met or equaled a listing). The ALJ in this case explicitly considered whether an agency CE was necessary, and decided it was not because the record was complete. Ms. Charles proposes a regime in which the claimant merely presents themselves, and the ALJ then assumes an affirmative duty to hunt about for a disability. This is not how the Social Security process works. *Cf. Million v. Astrue*, 260 F. App'x 918, 922 (7th Cir. 2008) ("Given the absence of evidence supporting [claimant]'s claim that she was disabled during the insured period, the ALJ's determination that [claimant] was not disabled was supported by substantial evidence."). Because the record was not ambiguous, there was no failure to order a consultative examination.

Finally, in order to bolster her position, plaintiff argues the ALJ should have deferred to a notation by a state physician in a preliminary Disability Determination Explanation. This notation reads "R/O physical as non severe" and "Will need PEDI CE to make assessment." (DE 8 at 3.) Plaintiff argues this means "a state agency physician[] found there was insufficient evidence to make a decision in A.L.L.'s case." Even assuming the Plaintiff's reading of the notation is correct, the ALJ is not required to weigh or defer to the doctor's conclusion that a pediatric consultative examination is required to make a disability determination. The

9

completeness of the record is the ALJ's determination, not a medical provider's. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) ("the ALJ in a social security hearing has a duty to develop a full and fair record"); *Poyck v. Astrue*, 414 F. App'x 859, 861 (7th Cir. 2011) ("This court gives deference to an ALJ's decision about how much evidence is sufficient to develop the record fully and what measures (including additional consultative examinations) are needed in order to accomplish that goal."). Speculative opinions by medical providers on issues reserved for the Commissioner are "entitled to no weight." *Spies v. Colvin*, 641 F. App'x 628, 636 (7th Cir. 2016) (ALJ was not required to weigh doctor's opinion on whether claimant could work, as that issue is reserved for the ALJ). "Just because [a statement] is contained in a medical record does not mean it is automatically a medical opinion" entitled to deference. *Miller v. Kijakazi*, No. 1:21-CV-094-PPS-SLC, 2022 WL 4592016, at *5 (N.D. Ind. Sept. 29, 2022) (acknowledging that ALJ's must weigh medical opinions, but noting the narrow definition of medical opinion under the regulations). The ALJ was not bound by the doctor's determination on the issue of whether another CE was necessary, nor was she required to even consider it. Accordingly, there was no error.

### *(2) The ALJ's explanation of her credibility determination was adequate.*

Ms. Charles argues the ALJ failed to properly articulate her reasons for finding Ms. Charles's testimony was not entirely consistent with the other evidence of record. Ms. Charles does not point to discredited testimony that otherwise would support a finding of disability, but merely takes issue with the explanation of the credibility determination. Ms. Charles writes, "The ALJ did not provide any analysis to support her one sentence conclusion that the allegations of record were not consistent with the evidence of record." Ms. Charles's reading is unsupported by

the text of the written decision; throughout the entirety of the decision, the ALJ supported her finding inconsistency by contrasting Ms. Charles's allegations with multiple contradictory statements from the objective medical records. In addition, the ALJ takes pains throughout the determination to give the claimant the benefit of the doubt, proceeding through the analysis despite the claimant's abject failures to meet or exceed any listing or to show any significant limitation. Finally, even if the ALJ had credited all of Ms. Charles's testimony, the Court is confident she would have reached the same decision because Ms. Charles's testimony and the medical record failed to show a significant limitation.

Ms. Charles's brief misstates the extent of the ALJ's consideration of Ms. Charles's testimony. Ms. Charles argues the entirety of the ALJ's analysis of Ms. Charles's testimony consists of a single sentence: "the allegations concerning the intensity, persistence, and limiting effects of A.L.L.'s symptoms are not entirely consistent with the medical evidence and other evidence of record." (R. 18–19.) But the ALJ's analysis goes far beyond this single sentence. The ALJ goes on to state, "the record generally demonstrates unremarkable conditions and essentially non-severe impairments as to the sickle cell trait, esotropia, and lower extremity and back pain." Throughout the 20-page decision, the ALJ contrasts the mother's testimony with the evidence present in the medical record. The ALJ's decision thoroughly considered Ms. Charles's testimony and explained her reason for finding it lacked credibility. When read as a whole, it is clear the extensive comparison and contrast between medical listings found disabling, Ms. Charles's testimony, and the objective medical record served to support the ALJ's ultimate conclusion that the allegations of A.L.L.'s symptoms were not entirely consistent with the record. *See McReynolds v. Berryhill*, 341 F. Supp. 3d 869 (N.D. Ill. 2018) ("the Court reads the ALJ's decision as a whole and the ALJ is not required to create "tidy packaging" throughout his

11

decision"); *Pepper v. Colvin*, 712 F.3d 351, 367–68 (7th Cir. 2013) ("the simple fact that an ALJ used boilerplate language does not automatically undermine or discredit the ALJ's conclusion if he otherwise points to information that justifies his credibility determination.") A representative example: when discussing whether A.L.L. had a limitation in moving about, manipulating objects, and caring for herself, the ALJ considered the contradictory evidence, first by summarizing Ms. Charles's (rather moderate) concerns, and then by describing in detail multiple contradictory reports indicating A.L.L. was a child of totally normal abilities.

Similar analyses have been found adequate to support a credibility determination. *See Metzger v. Astrue*, 263 F. App'x 529 (7th Cir. 2008) ("The ALJ here adequately explained her reasons for not finding [claimant] credible, stating that his physician's reports did not corroborate that he was experiencing the level of difficulty he described in connection with his claim for benefits."); *Brian J. v. Saul*, 438 F. Supp. 3d 903, 909 (N.D. Ill. 2020) (finding ALJ's evaluation of a number of inconsistencies between objective medical record and testimony constituted proper credibility determination). Though the ALJ did not then summarize her thorough analysis in a single paragraph, no such requirement exists, and there is no error where the reviewing court is able to clearly discern the information that justifies the ALJ's credibility determination. *See Pepper*, 712 F.3d at 368. The reviewing court is clearly able to follow the ALJ's line of reasoning in rejecting some of Ms. Charles's testimony, which is all that is required. The credibility determination was adequate.

Even if the credibility determination was inadequate, the Court would decline to remand because the record so strongly reflects a denial that the Court can "predict with great confidence what the result on remand will be." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). An error is harmless "if the error leaves us convinced that the ALJ would reach the same result on

remand." *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018). *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). However, harmless error cannot subsume the ALJ's "responsibility not merely to gesture thumbs up or thumbs down but to articulate reasoned grounds of decisions based on legislative policy and administrative regulation." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). Plaintiff writes, "this was a case where Ms. Charles'[s] testimony was critical, as she was the individual with most access to and most understanding of A.L.L's symptoms and associated limitations." But even if the ALJ adopted Ms. Charles's testimony in whole, her testimony does not support a marked limitation in any domain. Ms. Charles does not point to any testimony that, if credited, would support a finding of disability because the testimony does not show how these medical issues limited A.L.L.'s daily activities in any way, much less rendered her disabled. *Gedatus v. Saul*, 994 F.3d 893, 905 (7th Cir. 2021) (it is the claimant's burden to allege impairment, and "an individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability"). Compare, for instance, Ms. Charles's testimony concerning pain: even if Ms. Charles's assertions (pain at the end of a vigorous day of playing, several times a week, that sometimes woke A.L.L. from her sleep), it still is highly unlikely it would constitute marked or an extreme limitation. *See* 20 C.F.R. § 416.92a(e)(2)(i) (a marked limitation interferes seriously with your day to day functioning and is equivalent to the functioning at least two, but not three, standard deviations below the mean). Ms. Charles's other testimony is similarly vague and unpersuasive. For example, in describing A.L.L.'s vision, Ms. Charles testified A.L.L. wore glasses, experienced an occasional wandering of her left eye when focusing, and was planning to have surgery to correct the left eye. But the disability standard for vision focuses on the claimant's capabilities in her better eye, and Ms. Charles never testified that A.L.L. experienced any significant visual impairment after correction in her right eye. *See,*

*e.g.,* 20 C.F.R. Part 404, Subpart P, Appendix 1, listings 102.04 ("Loss of visual efficiency, or visual impairment, in the better eye."). Even if Ms. Charles's testimony was found to be entirely credible, the ALJ's determination is unlikely to have changed because Ms. Charles's testimony does not support a finding of disability. This leaves the Court extremely confident the ALJ would reach the same decision again if remanded. Therefore, even if the credibility determination lacked specificity, the error would be harmless. *See Buckhanon*, 368 F. App'x at 678 ("although credibility findings should be express and reasoned, that preference is designed to force ALJs to proceed cautiously before rejecting specific portions of a claimant's testimony as not credible" but error was harmless where the lack of specificity was not prejudicial). Accordingly, the Court affirms the ALJ's decision.

### F. Conclusion

For those reasons, the Court AFFIRMS the Commissioner's decision. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: October 3, 2023

                                            /s/ JON E. DEGUILIO
                                            Judge
                                            United States District Court